St. Louis Trust Co. v. Rudolph.

ST. LOUIS TRUST COMPANY, *Administrator*, v.
RUDOLPH, *Appellant.*

136  169
f 86a  126

### Division One, December 1, 1896.

1. **Parent and Child**: ADVANCEMENT: LOAN: PRESUMPTION. Where a parent gives money to a child, a *prima facie* presumption obtains, that it was intended as an advancement or a gift, ràther than as a loan.

2. ————: ————: ————: ————. So where a parent makes a substantial provision for his son's establishment in life, as by setting him up in business or in his profession, a like presumption arises.

3. ————: ————: ————: ————: EVIDENCE. Evidence examined and *held* to sustain a finding that money furnished by a father, since deceased, to his son constituted a loan.

*Appeal from the St. Louis City Circuit Court.*

REVERSED AND REMANDED.

*P. Taylor Bryan* and *E. S. Robert* for appellant.

(1) "The law does not presume, from the simple fact of one man's handing over money to another, that the transaction is *prima facie* a loan." *Gerding v. Walter*, 29 Mo. 426; *Cox v. Bennett*, 18 W. N. C. 519; *Carey v. Gerrish*, 4 Esp. 9. (2) The plaintiff can not recover on mere conjectures; there must be either direct proof or facts shown from which legitimate and logical inferences may be drawn. *Breen v. St. L. Cooperage Co.*, 50 Mo. App. 202; *Searles v. Railroad*, 101 N. Y. 661; *Dobbins v. Brown*, 119 N. Y. 188;

*Smith v. Railroad*, 37 Mo. 292.    (3) *First.*    If money is delivered by a parent to a child, it is presumed to be a gift.    *Hicks v. Keats*, 2 B. & C. 71; *Gerding v. Walter*, 29 Mo. 426; *Cox v. Bennett*, 18 W. N. C. 519; *Holowell v. Skinner*, 4 Ired. 165; *Ray v. Loper*, 65 Mo. 470.    *Second.*    We invoke as analogous the principle that services rendered a parent by a child are presumed to be gratuitous.    *Kinner v. Tschirpe*, 54 Mo. App. 575; *Bittrick v. Gilmore*, 53 Mo. App. 53; *Woods v. Land*, 30 Mo. App. 176; *Disbrow v. Durand*, 54 N. J. L. 343.    *Third.*    And, also, as analogous the rule that where a man purchases land and takes the title in the name of his wife or child, there is no resulting trust.    Perry on Trusts, sec. 143; Pomeroy, Eq. Jur. [2 Ed.], sec. 1039; *Schuster v. Schuster*, 93 Mo. 438; *Ilgenfritz v. Ilgenfritz*, 116 Mo. 429.

*John F. Shepley* for respondent.

(1) The circuit court did not err in refusing to declare the law to be that upon the evidence offered the plaintiff could not recover.    *First.* The introduction in evidence of the check signed by the respondent's testator payable to the order of the appellant and indorsed by the latter in blank, with the admission that it was presented for payment at the bank upon which it was drawn, and that whoever presented it received the money called for on its face, and with the proof that it was found among Wiley Rudolph's papers, raised a presumption that the appellant received the proceeds of the check.    *Alvord v. Baker*, 9 Wend. 323; *Gibbon v. Featherstonaugh*, 1 Starkie, 225; *Shepherd v. Currie*, 1 Starkie, 454.    *Second.* The evidence introduced to prove that the money so received by the appellant from his father was a loan by the latter to him tended to prove that fact and was sufficient to sustain the

finding of the circuit court. (2) *First.* If at the trial of the case in the circuit court there was any evidence tending to prove the allegations of the plaintiff's petition, the judgment should be affirmed. *Brown v. Railroad*, 50 Mo. 461; *Baum v. Fryrear*, 85 Mo. 151. *Second.* And this even though such evidence was inferential or circumstantial in character. *Moore v. Railroad*, 73 Mo. 438; *Twohey v. Fruin*, 96 Mo. 109; *Hall v. Hall*, 107 Mo. 110; *Ware v. Stevenson*, 10 Leigh, 155; *Trout v. Railroad*, 23 Gratt. 619. *Third.* And even though the inference upon which the finding of the court was based was different from or opposite to that which this court would have drawn from the facts and circumstances proven. *Moore v. Railroad, supra.* *Fourth.* Unless it is clear to this court that said facts and circumstances afford no fair or reasonable basis for the inference drawn; unless, in other words, the so-called inference amounted to a bare conjecture. *Moore v. Railroad, supra; St. Louis v. Sullivan*, 8 Mo. App. 455; *Tailer v. Murphy*, 24 Mo. App. 420; *Matney v. Railroad*, 30 Mo. App. 507; *Smith v. Telegraph Co.*, 57 Mo. App. 259. (3) The circuit court did not err in admitting testimony over the objection of the defendant. The evidence admitted by the court was proper and legal evidence because it tended to prove plaintiff's case and because it furnished a fair and reasonable inference of the fact necessary to establish the same. *Moore v. Railroad, supra; Matney v. Railroad, supra; Tailer v. Murphy, supra.*

MACFARLANE, J.—The administrator with the will annexed of Wiley Rudolph sues Charles M. Rudolph, a son of deceased, for money loaned during the life of the former. The petition was in eleven counts. The tenth and eleventh counts were dismissed; on six of the remaining counts there were verdicts and judgments

for defendant.   The ninth count was on a duebill given by defendant to deceased.   On this count there was a judgment for plaintiff of which no complaint is made on this appeal.   The third count of the petition charges that "on the twenty-first day of August, 1889, said Wiley Rudolph lent said defendant the sum of $4,500, which said defendant promised to repay him on demand, with interest from date at the rate of six per cent per annum, that defendant failed to pay," etc. The answer to this count is a general denial.

On a trial the court sitting as a jury found for plaintiff on the ninth count for $273.83 and on the third count for $2,635 and judgment was rendered against defendant for $2,908.83.   Defendant appealed.

On the trial plaintiff introduced a check on a bank of Memphis, Tennessee, for $4,500, dated August 21, 1889, drawn by Wiley Rudolph payable to defendant and indorsed by him.   It was admitted that the money was paid on this check.

The evidence shows that defendant is the son of Wiley Rudolph, deceased, and prior to August, 1889, had been in the employ of the Cunningham Carriage Company of St. Louis at a salary of $200 per month. From letters of defendant, introduced in evidence, it appeared that as early as June 6, 1889, he wished to engage in a more permanent business and had already investigated the affairs of a manufacturing corporation engaged in business at Belleville, Illinois, with a view of buying an interest therein and securing a permanent situation.   On that day he wrote his father that he had agreed to purchase $5,000 of the stock of this corporation and requested him to come at once to St. Louis.

On the third of August, 1889, defendant wrote his father stating that the trade had been concluded and asking him to send a check for $5,000 by the fifteenth of that month in order that he might close the matter

up.   On the first of October, 1889, he wrote from Belleville saying that everything was running satisfactorily but he could tell nothing definite about the business for two or three months.

It was shown that a certificate for fifty shares of the stock in said corporation was issued to defendant, which was afterwards indorsed in blank by him.   The same shares were sold by deceased to F. W. Wallace in January, 1891, for $1,750 cash, and the assumption of a debt of $700, owing by deceased as surety for the corporation.

A deed from deceased to defendant dated July 12, 1887, conveying to the latter certain real estate was read in evidence by plaintiff.   This deed recited that it was made "by way of advance to equal advances heretofore made."

There can be no dispute, under the evidence, that defendant received from his father the check for $4,500, and that the money was paid to him.   But the simple fact of one man putting money into the hands of another does not make the transaction, *prima facie*, a loan of the amount.   Indeed in case a parent turns money over to a child the presumption is that it was intended as an advancement or a gift rather than as a loan.   *Gerding v. Walter*, 29 Mo. 426; *Gunn v. Thruston*, 130 Mo. 345.

Before plaintiff was therefore entitled to recover it was incumbent on him to introduce evidence tending to prove that the money, received by defendant from his father, was intended as a loan.   Defendant insists that this was not done and the controlling question is whether the evidence tended to prove a loan of the money.

At the request of defendant the court gave declarations of law to the effect that the burden was on plaintiff to prove that, at the time Wiley Rudolph

delivered the check to defendant, he intended that the amount should be repaid to him, and that it was not intended by the parties that it should be a gift, or advancement to defendant, or that it should be invested for deceased.

These declarations were as favorable as defendant could consistently ask and if error was committed on this branch of the case it was in submitting any question of fact to the court, and in not declaring, as a matter of law, as requested by defendant, that there was no evidence tending to prove that the money was intended as a loan.

On the third of August defendant wrote from Omaha, Nebraska, to his father, then in Philadelphia, announcing that he had concluded the purchase of fifty shares of the stock and requesting that he send, by the fifteenth of that month, a check or draft for $5,000 with which to make payment. The check for $4,500 was dated August 21, and was indorsed by defendant. In a subsequent letter defendant called the attention of his father to the fact that he had borrowed $500 from a third party to complete the payment. From these facts the natural inference is drawn that the money was received by defendant to be used in the purchase of the stock.

The stock was purchased and the certificate was issued to defendant, who was made an officer of the corporation. In another letter defendant says that he is receiving $100 per month as compensation for his services, and would also be entitled to the dividends on the stock. From these facts the inference may be drawn that defendant purchased the stock for himself, and not for his father, and that the money was obtained, and used, for that purpose. These facts, however, are not inconsistent with the idea that the money was intended as an advancement or gift. It is

a well established rule of law that if a parent makes a substantial provision "for his son's establishment in life, as by setting him up in business or in his profession, the presumption of an advancement arises." 1 Am. and Eng. Ency. of Law [2 Ed.], 768, and cases cited in note.

The facts established by the evidence, up to and including the purchase of the stock, do not rebut the presumption that the money advanced was intended as a provision for setting defendant up in business. Do the subsequent dealings between the parties tend to prove a different intention?

The purchase was made between August 21, 1889, and October 1, 1889, for we have a letter from defendant of the latter date which shows that he was then engaged in business as an officer of the corporation. The evidence sheds no further light on the question until some time in January, 1891. At that date we find the certificate of the stock, indorsed by the defendant, in the hands of his father who was claiming its ownership. The evidence shows that previous to that, the date not shown, the father had indorsed the note of the corporation for $700. In January, 1891, deceased sold the stock for $1,750 in cash, the purchaser assuming the payment of the note. Beyond this the evidence gives us no information.

Thus it is shown that the investment was not profitable, and that deceased became the owner of the depreciated stock. When and under what circumstances it came into his hands, and what it was then worth, does not appear from the evidence. The court from all the evidence found that the money was loaned to defendant and the stock was taken back in part payment thereof.

There was admitted in evidence a letter from deceased addressed to defendant, dated July 27, 1888,

in which he directs the disposition he wishes to be made of all his property. This letter was written at Memphis, Tennessee, which appears to have been the residence of deceased, and was admitted to probate, in Memphis, as his will. In this letter there is no mention of advancements having been made to any of the children of the testator. By this will, after making some specific bequests, the testator directs all the residue of the property owned by him at his death to be divided among his children.

This disposition of all his property by will precludes any final intention of charging the check against defendant as an advancement. The law of advancements can only be applied in case of intestacy. *Turpin v. Turpin*, 88 Mo. 340. The court therefore inferred that the money was not intended as an advancement.

That the money was not intended as a gift is apparent from the fact that the stock was taken off the hands of defendant by the testator. The only fair and reasonable inference, therefore, from all the evidence, is, that the check was intended as a loan.

There was no plea of payment or part payment made, but the court undertook to give defendant credit for the amount for which the testator sold the stock. This action of the court fairly opens up the question whether the testator, in taking the stock off the hands of defendant, and retaining no note or other evidence of indebtedness, considering the relation of the parties, and their dealings in this matter, did not intend thereby to cancel the debt entirely. Such an inference could certainly be drawn. But an inference may also be drawn that the value of the stock should be credited upon the indebtedness. It was for the court to draw the inference.

But the credit should have been for the value of the stock when received by deceased, and not for the

amount for which he sold it at a subsequent date. But as there was no evidence of such value the court could very properly take the selling price as the value. So we do not think reversible error was committed in this.

The debt was $4,500. The stock sold for $2,450. Applying the credit, a balance of only $2,050, and interest, would be due on this count. Add to that the amount of $273.83 found due on the ninth count, we have a total of $2,322.83 and interest. It is apparent the court committed an error in law, or in its calculation, in ascertaining the amount of the credits to which defendant was entitled. The credits are $500 more than was allowed. This is conceded by plaintiff. The judgment then should have been for $2,408.83 instead of $2,908.83. The attention of the court was called to this error in the motion for a new trial, and it was not corrected by the court, or the excess remitted by plaintiff. If it had been corrected this court would not have had jurisdiction of the appeal.

For several reasons, which will suggest themselves from what has been said, we are of the opinion that there should be a retrial, and for that purpose the judgment is reversed and the cause is remanded. All concur, except ROBINSON, J., who is absent.